IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEW WORLD STRTAGEIES, LLC | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-103 |
| | : | |
| SOLARKAL, LLC | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **September 29, 2026**

Plaintiff New World Strategies, LLC (NWS) provided sales and marketing services to Defendant SolarKal, LLC as an independent contractor. According to NWS, as SolarKal's business grew and the company sought to transition its salesforce in-house, SolarKal terminated its contract with NWS. Based on an ensuing dispute concerning payment owed to NWS and the ownership of business contacts developed during NWS's engagement, NWS sued SolarKal in Pennsylvania state court on contract-based claims. SolarKal then filed a competing action in the Southern District of New York, asserting claims related to the same contractual dispute, and removed this case based on diversity jurisdiction.[1] Before the Court is SolarKal's motion to transfer venue to the Southern District of New York under 28 U.S.C. § 1404(a) or alternatively to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Because a forum-selection clause governs all of NWS's claims, SolarKal's transfer motion is granted.

[1] The Southern District of New York, in considering a motion to dismiss, stayed the parallel action after determining that this lawsuit was first filed, and did not reach the issue concerning the forum selection clause. *SolarKal, LLC v. Gollatz*, No. 25-cv-10007 (GHW) (GWG), 2026 WL 1433045, at *6 (S.D.N.Y. May 21, 2026).

**BACKGROUND**[2]

SolarKal, a New York limited liability company with a principal place of business in Massachusetts, is a solar energy advisor to commercial customers nationwide. Compl. ¶¶ 3–4, ECF No. 1, Ex. 3. NWS is a Pennsylvania limited liability company whose sole owner and member is Holt Gollatz. *Id.* ¶¶ 1, 10. Beginning in 2017, SolarKal hired Gollatz as a "solar broker" to market and sell its services. *Id.* ¶ 9. They entered into consecutive Solar Broker Agreements in 2017, 2019, and 2022, the first two between SolarKal and Gollatz, and the third between SolarKal and NWS, with Gollatz as its signatory. *Id.* ¶¶ 9, 11, 13. The services NWS agreed to provide were defined in Exhibit A, while the compensation structure for NWS's services was set out in Exhibit B. ECF No. 1, Ex. 3 at 51.

Exhibit D to the Solar Broker Agreements was a non-disclosure agreement. *Id.* at 27–33. The "Confidential Information and Invention Assignment Agreement" (CIIAA) provided that "[n]ew business contacts or prospect lists originated by [Gollatz/NWS] for [SolarKal]'s photovoltaic sales will be considered as jointly owned." *Id.* at 28. It also contained a forum selection clause in a paragraph titled "Governing Law; Jury Waiver; Consent to Jurisdiction":

> This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the state of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof. **I hereby irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for the Southern District of New York** and any state court in the state of New York that is located in the county of New York **in connection with any legal action** or quasi legal proceeding ("Proceeding") **directly or indirectly arising out of or relating to this Agreement.**

[2] The factual background is drawn from the well-pleaded allegations in NWS's Complaint, which the Court accepts as true.

*Id.* at 31 (emphasis added).[3]

NWS claims that SolarKal began pushing NWS out of the business, and in 2024 ultimately terminated NWS's 2022 Solar Broker Agreement without cause. Compl. ¶¶ 30, 37, 38, ECF No. 1, Ex. 3. According to NWS, SolarKal also removed NWS's access to information and documents to which NWS was contractually entitled. *Id.* ¶¶ 48–49. On these allegations, NWS brought contract claims pursuant to the 2022 Solar Broker Agreement for declaratory relief, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, promissory estoppel, breach of fiduciary duty, and conversion. *Id.* ¶¶ 57–61, 62–68, 69–72, 73–76, 77–80, 81–87, 88–93.

SolarKal's Section 1404(a) motion argues that transfer is appropriate pursuant to either the CIIAA's forum selection clause or the first-filed rule. Def's Mot. Transfer 6, ECF No. 5, Ex. 2. With respect to SolarKal's first basis for transfer, NWS does not challenge the validity of the forum clause; the parties agree that the forum selection clause is mandatory and enforceable. NWS moreover concedes that some of its claims, "those based on NWS' joint ownership of the business contacts and prospect lists it originated," fall within its scope. Pl.'s Opp'n 10, ECF No. 6. NWS argues only that the claims arising out of the 2022 Solar Broker Agreement are not subject to the CIIAA's forum clause. *Id.* at 9–10. On NWS' view, the CIIAA and 2022 Solar Broker Agreement are two separate contracts: The former contains a forum clause, but the latter crucially does not. *Id*. SolarKal, in turn, contends that the 2022 Solar Broker Agreement incorporates the CIIAA, and that the broad language of the forum selection clause reaches claims under the Solar Broker

[3] The actual CIIAA that is the subject of this litigation is not in the record. However, the CIIAA attached to the first Solar Broker Agreement is included. The parties characterize the Solar Broker Agreements, and their attachments, as similar, and NWS has not alleged that the CIIAA attached to the third Agreement differs in any respect from the exemplar in the record. *See* Compl. ¶¶ 13, 18, ECF No. 1, Ex. 3; Def's Mot. Transfer 6-7, ECF No. 5, Ex. 2.

Agreement as well. Def's Reply 3–4, ECF No. 8. Therefore, SolarKal argues, all the claims must be decided by the Southern District of New York. *Id.* at 4.

**LEGAL STANDARD**

28 U.S.C. § 1404(a) authorizes a district court to transfer an action to "any other district… where it might have been brought," if doing so serves "the convenience of parties and witnesses" and is "in the interest of justice." In *Atlantic Marine*, the Supreme Court explained that a motion to transfer under § 1404(a) "provides a mechanism for enforcement of forum-selection clauses" and held that "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 59, 62 (2013).

The Section 1404(a) analysis typically requires courts to evaluate a variety of private and public-interest factors "to determine, on balance, whether the litigation would 'more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). But when the contract contains a forum selection clause, the parties' private interests are irrelevant; instead, "a district court may consider arguments about public-interest factors only." *Id.* (quoting *Atlantic Marine*, 571 U.S. at 64). And because public interest factors "will rarely defeat a transfer motion, the practical result," the Supreme Court has emphasized, "is that forum-selection clauses should control except in unusual cases." *Id.* at 57–58 (quoting *Atlantic Marine*, 571 U.S. at 64).

Public interest factors as defined by the Third Circuit in *Jumara v. State Farm Ins. Co.* include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora

resulting from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." 55 F.3d 873, 879 (3d Cir. 1995). Finally, "the party acting in violation of the forum-selection clause…bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 571 U.S. at 67.

**DISCUSSION**

As previously noted, the CIIAA's forum selection clause gives the Southern District of New York exclusive jurisdiction over lawsuits "directly or indirectly arising out of or relating to this Agreement." The dispute here is over the scope of the forum selection clause, and specifically whether it applies to claims arising under the 2022 Solar Broker Agreement. That question turns on the meaning of the word "Agreement." Essentially, NWS reads "Agreement" to refer to the CIIAA narrowly, while SolarKal argues "Agreement" points to the 2022 Solar Broker Agreement.

The scope of a forum selection clause is a question of contract interpretation. *John Wyeth & Bro Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). "[A]s a general rule in diversity cases, courts should apply state contract law to decide [contract] interpretation questions." *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017). In determining which state's contract law to apply, courts look to the choice-of-law rules of the state in which the district court is located. *Id.* Accordingly, Pennsylvania's choice-of-law rules apply, which provide that when a contract contains a choice of law provision, "Pennsylvania courts generally honor the intent of the contracting parties," ignoring their intent only "if that provision conflicts with strong public policy." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55, 56 (3d Cir. 1994) (first quotation citing *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989)) (second quotation citing *Soxman v. Goodge,* 539 A.2d 826 (Pa. Super Ct. 1988)). In this

case, the Solar Broker Agreement and CIIAA each contain a choice-of-law clause, and both specify New York law as governing their interpretation. ECF No. 1, Ex. 3 at 31, 53.

SolarKal's transfer motion lacks any citation to New York contract law, but its argument that "Agreement" refers to the 2022 Solar Broker Agreement, because the 2022 Solar Broker Agreement incorporates the CIIAA, is persuasive. "The doctrine of incorporation by reference is grounded on the premise that the material to be incorporated is so well known to the contracting parties that a mere reference to it is sufficient.'" *Maines Paper & Food Serv., Inc. v. Key Stone Assocs.* 23 N.Y.S.3d 398, 400 (App. Div. 2015) (citation omitted). To be properly incorporated and binding on the contracting parties, "[t]he document is required to … be described in the contract such that it is identifiable beyond all reasonable doubt." *Id.* (citation modified). In *Eshaghpour v. Zepsa Industries Inc.*, a New York appellate court declined to enforce a forum selection clause because it was not incorporated by reference in the agreement. 101 N.Y.S.3d 836 (App. Div. 2019). The forum selection clause "never appeared in the proposed agreement that plaintiff ultimately reviewed and signed." *Id.*

Here, by stark contrast, the CIIAA was expressly attached to the 2022 Solar Broker Agreement as an exhibit, and several features of the 2022 Solar Broker Agreement make clear that the attachments and the 2022 Solar Broker Agreement, together, comprise a unified contract. As SolarKal points out, the 2022 Solar Broker Agreement refers to itself as containing the CIIAA: Paragraph 4 entitled "Term and Termination" provides that breach of "this Agreement[] includ[es] but [is] not limited to Solar Broker's Solar Broker's obligations under the Confidential Information and Invention Assignment Agreement between the Company and Solar Broker specified in Exhibit D hereto." ECF No. 1, Ex. 3 at 51. Paragraph 9, furthermore, titled "Confidential Information and Invention Assignment Agreement," required NWS to "sign . . . a Confidential Information and

Invention Assignment Agreement in the form set forth as Exhibit D hereto, on or before the date Solar Broker begins providing the Services." *Id.* at 53. And perhaps most telling of the parties' intent, before SolarKal invoked the CIIAA's forum selection clause to transfer the lawsuit to the Southern District of New York, NWS's own complaint alleged that "incorporated in the Third Solar Broker Agreement (and the prior agreements) was a Confidential Information and Invention Assignment Agreement." Compl. ¶¶ 18, 19, ECF No. 1, Ex. 3. Applying New York law, the 2022 Solar Broker Agreement described the CIIAA such that it was "identifiable beyond all reasonable doubt."

The 2022 Solar Broker Agreement and CIIAA were not two separate contracts: The record suggests they were executed at the same time, between the same parties, and effectuate the same employment relationship. Under principles of contract law, "all contemporaneous instruments between the same parties relating to the same subject matter are to be read together and interpreted as forming part of one and the same transaction." *Davimos v. Halle*, 877 N.Y.S.2d 20, 21 (App. Div. 2009).

Having concluded that the CIIAA was incorporated by reference and that the 2022 Solar Broker Agreement and CIIAA form a single contract, the Court interprets the word "Agreement" consistently with its definition in the 2022 Solar Broker Agreement. The paragraph containing the forum selection clause uses the word "agreement" in both its capitalized and uncapitalized forms; the final sentence, however, expressly uses capitalized "Agreement," indicating that the word is being used as a defined term. ECF No. 1, Ex. 3 at 31. As SolarKal notes, the 2022 Solar Broker Agreement defines "Agreement" to mean itself. ECF No. 1, Ex. 3 at 51. Accordingly, use of the capitalized term in the final sentence demonstrates that "Agreement" refers to the principal contract.

In any event, and perhaps more forcefully, even if "Agreement" meant the CIIAA instead of the 2022 Solar Broker Agreement, NWS's argument cannot be squared with the broad language of the forum selection clause, which gives the Southern District of New York exclusive jurisdiction over litigation, not only "arising out of" the "Agreement," but also litigation "relating to" it, "directly or indirectly." *See HMS Holdings Corp. v. Moiseenko*, 49 Misc. 3d 1215(A), 29 N.Y.S.3d 847 at *4 (Sup. Ct. 2015) ("'To arise out of' …generally indicates a causal connection', whereas the phrase 'relating to' is 'defined more broadly' to simply mean 'connected by reason of an established or discoverable relation.'" (citing *Coregis Ins. Co. v. American Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001))). There is no question that the claims under the 2022 Solar Broker Agreement, at a minimum, "indirectly" "relat[e] to" the CIIAA. Accordingly, the forum selection clause encompasses all of NWS's claims, including those arising under the 2022 Solar Broker Agreement, regardless of whether "Agreement" refers to the principal contract or the attached exhibit.

The Court now turns to the Section 1404(a) public interest factors and considers whether, because of "extraordinary circumstances unrelated to the convenience of the parties," the forum-selection clause should not be enforced. *Atlantic Marine*, 571 U.S. at 62. NWS, the party who bears the burden of showing "extraordinary circumstances," appeals to *Jumara*'s local-interest factor, arguing that "this Court has a greater interest in overseeing the instant dispute" because "SolarKal contracted with and directed its conduct towards a Pennsylvania company." Pl.'s Opp'n 10, ECF No. 6. Although this Court certainly has an interest in controversies involving Pennsylvania companies, so too does the Southern District of New York, which equally retains an interest because SolarKal is a New York company. Thus, Pennsylvania and New York's interest in this litigation are approximately equal. NWS further argues that it is a small company, that

SolarKal is a significantly larger company, and "[i]t would…be more expensive and difficult for NWS to litigate in New York." *Id.* But this is a private-interest argument forbidden by *Atlantic Marine*, which reasoned that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, 571 U.S. at 64. Lastly, the final *Jumara* factor—"the familiarity of the trial judge with the applicable state law in diversity cases"—weighs in favor of transfer because New York law governs the parties' litigation, and the Southern District of New York is better positioned to apply the law of New York than a court in Pennsylvania.

**CONCLUSION**

In sum, all of NWS' claims fall within the forum selection clause, and NWS has not carried its burden of showing why the public-interest factors overwhelming weigh in favor of keeping the case in the Eastern District of Pennsylvania. Accordingly, SolarKal's motion to transfer venue to the Southern District of New York will be granted. SolarKal's remaining arguments, to transfer under the first-filed rule or to dismiss because of lack of personal jurisdiction, are moot. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.